# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:11cr00013 |
| ) | **REPORT AND** |
| DANIEL ANTHONY BRADLEY and ) | **RECOMMENDATION** |
| SIERRA CORRINE LIELANI JACKSON, ) | |
| Defendants ) | |

This matter is before the court on the defendants' Joint Motion To Suppress, (Docket Item No. 46), and Supplement To Corrected Joint Motion To Suppress, (Docket Item No. 52), ("the Motions"). The Motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held before the undersigned on January 13, 2012. For the reasons set forth below, I recommend that the court deny the Motions.

## *I. Facts*

The defendants, Daniel Anthony Bradley and Sierra Corrine Lielani Jackson, were arrested on September 14, 2011, after a traffic stop just east of the Virginia boundary of the Cumberland Gap National Historical Park, ("Park"), in Lee County, Virginia. The defendants were originally charged with making false statements in violation of 18 U.S.C. § 1001. Subsequently, the defendants were indicted and charged with conspiracy to make false statements, making false statements, conspiracy to possess with intent to distribute oxycodone and possession with intent to distribute oxycodone.

-1-

The Motions seek to suppress evidence recovered from their vehicle during the September 14, 2011, traffic stop and any fruits of that evidence. At the hearing, Park Ranger Mike Ausmus testified that he was on duty and traveling south on U.S. 25E in his patrol vehicle within the confines of the Park when he first noticed the defendants' vehicle. Ausmus stated that his attention was drawn to the vehicle because its right-side turn signal light remained on after the vehicle had turned onto the exit ramp leading from southbound U.S. 25E to eastbound U.S. 58. Ausmus said that he also noticed that the vehicle's rear tag light was not working. Ausmus followed the vehicle onto eastbound U.S. 58 and observed the vehicle weave out of its lane several times before it made an abrupt change into the passing lane with no signal. Ausmus said that he then activated his blue lights and pulled the vehicle over approximately 100 feet outside of the Park's Virginia boundary. Ausmus stated that he pulled the vehicle over because the vehicle's rear tag light was not working and because he suspected the driver might be impaired.

Ausmus testified that his in-car video camera recorded the traffic stop. This recording was entered into evidence as Government's Exhibit 1. Ausmus explained that the audio for the recording comes from a microphone that he wears. He stated that, in reviewing the recording to prepare for his court appearance, he noticed that, approximately 40 minutes into the video recording, there was no sound recording. He stated that the only explanation he had for this was that the batteries for the microphone must have run out of charge.

After exiting his vehicle, Ausmus approached the stopped vehicle on the passenger side. Ausmus found Jackson in the driver's seat and Bradley in the front passenger seat. The vehicle, a van, had a temporary Florida tag, and Jackson

produced a Florida driver's license.  When asked why they were traveling into Virginia, both Jackson and Bradley told Ausmus that they were in Virginia to attend the funeral of Bradley's grandfather.  After Jackson's license was confirmed as valid, Ausmus asked Bradley if he had any form of identification on him.  Bradley stated that he did not.  Ausmus stated that he noticed a bulge in one of Bradley's pockets so he asked Bradley to step out of the vehicle to pat him down for weapons.

Bradley told Ausmus his name was "Daniel Anthony Schusler" with a March 1972 date of birth and a Social Security number ending in 4043.  Ausmus contacted dispatch by radio to confirm Bradley's identity, but was told there was no record of a Florida driver's license being issued to Daniel Anthony Schusler.  Ausmus told Bradley that the records did not confirm his identity.  Bradley then told Ausmus that his Florida driver's license was suspended for lack of insurance.  As Ausmus was returning to his vehicle to again attempt to verify Bradley's identity, Bradley approached him and told him that he had not been truthful.  Bradley told Ausmus that he had given him the wrong name because he believed that he had warrants outstanding for him for traffic violations in Georgia and Florida.

Ausmus then placed Bradley in handcuffs. He told Bradley that he was not under arrest, but that he was placing him in handcuffs for his safety until he could determine who he was and whether there were any outstanding warrants for his arrest.  Ausmus asked Bradley if he would mind if Ausmus looked around in the van, and Bradley said he did not mind.  At that point, another Park ranger arrived at the scene, and Ausmus returned to the van to speak with Jackson.  Ausmus

asked Jackson if the van belonged to her, and she said it did. Ausmus then asked Jackson: "Do you care if I look around the van?" Jackson replied, "Uh, no." Ausmus then told Jackson to turn off the motor and to step out of the van. As she exited the van, Jackson reached for something, and Ausmus asked her what she was reaching for. Jackson replied her shoes and her purse. Ausmus told her to leave those items in the van.

Ausmus then began to search the van. Ausmus stated that he was looking for evidence that would show Bradley's identity. He also stated that he was looking for weapons or evidence of criminal activity. Ausmus stated that when he first entered the vehicle, he noticed a large amount of cash visible in an open purse sitting in the floor between the two front seats. He also noticed a small blue cloth bag in the purse. Inside the cloth bag, Ausmus found four blue pills and one-half of a yellow pill. Ausmus also said that, in a small open compartment above the driver's seat, he found an unopened antacid bottle. Upon further inspection, he determined that the antacid bottle had a hidden compartment on the bottom. Ausmus opened this hidden compartment and found numerous pills, which he visually identified as oxycodone and alprazolam. An inventory of the items seized in the search states that 82.5 assorted tablets were discovered in the hidden compartment. A cell phone also was found in the search. Ausmus admitted, however, that the cell phone was not listed on the inventory of seized items.

During the search of the van, Bradley was placed in the back of Ausmus's patrol vehicle. The government introduced an audio recording taken by the vehicle's in-car recording device of a conversation between Bradley and Ranger Greg Johnston. Johnston asked Bradley if the cell phone found in the search was

Case 2:11-cr-00013-JPJ-PMS   Document 56   Filed 01/18/12   Page 4 of 9   Pageid#: 109

Bradley's. Bradley said it was. Johnston asked if he could look at the phone and Bradley said yes. Ausmus stated that he did not examine the cell phone, but he believes Johnston did because Johnston told him that there were some relevant text messages on it. Ausmus stated that, the next day, he gave the phone to Drug Enforcement Administration Special Agent Todd Brewer.

Brewer testified that he went through the phone's contents the next day and noticed some text messages that, based on his knowledge and experience, appeared to be related to drug trafficking. Based on the information Brewer gleaned from the phone, grand jury subpoenas were issued for certain witnesses. Brewer stated that he interviewed Bradley and Jackson separately on the day after their arrest, but he did not seek consent from them to examine the contents of the phone. Brewer stated that they both told him that they had been advised of their *Miranda* rights. He also said that both originally told him they had traveled to Virginia to attend the funeral of Bradley's grandfather. When pushed for details surrounding the death and funeral, however, both admitted that was not the reason for their trip. Brewer said that he then turned the phone over to Detective Jamie Blevins the next day, and Blevins used a computer program to download the contents of the phone.

## II. Analysis

The defendants argue that the warrantless search of their vehicle violated the Fourth Amendment's prohibition on unreasonable searches. As a result, they argue that any evidence seized in the search or any fruits of this evidence should be suppressed. In particular, the defendants argue that they did not consent to the search of the vehicle or their belongings contained in the vehicle. They further

argue that the Supreme Court's opinion in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710 (2009), prohibits a warrantless search of a vehicle incident to arrest after the occupants have been placed in custody and removed from the vehicle. Both arguments are incorrect.

Ausmus's testimony and the recording of the traffic stop show that Jackson consented to the search of the vehicle. After granting consent to search the vehicle, Jackson did not make any comment or take any action which would indicate that she was withdrawing that consent. In particular, I hold that reaching for her purse and shoes, without more, did not constitute a withdrawal of that consent. Also, the audio recording shows that Bradley consented to allow Johnston to look at his cell phone. I do not, however, believe the reasonableness of these searches depends on the defendants' consent.

The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Bush*, 404 F.3d 263, 275 (4th Cir. 2005) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). One of the exceptions to the warrant requirement is a search incident to a lawful arrest. *See United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006); *United States v. Bell*, 692 F. Supp. 2d 606, 611 (W.D.Va. 2010).

The defense is correct in its assertion that *Gant* limited this exception somewhat. The Supreme Court in *Gant* held, in part, that police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. *See Gant*, 556 U.S. at \_\_\_\_, 129 S.Ct. at 1719. *Gant* further held, however, that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'... [T]he offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant,* 129 S.Ct. at 1719; *see also Bell*, 692 F. Supp. 2d at 612.

Here, Bradley had admitted that he had made a false statement to Ausmus about his identity. Bradley also had admitted that he had done so because he believed there were outstanding warrants for his arrest. Once Bradley admitted that he had lied to the officer, Ranger Ausmus had probable cause to arrest him for making false statements and to conduct a search of the vehicle and its contents to determine if it contained any evidence of his identity. Thus, Ausmus had a reasonable belief that evidence relevant to the crime of making false statements might be found in the vehicle. *See Gant*, 129 S.Ct. at 1719.

Furthermore, once Ausmus found the cash and discovered the drugs contained in the hidden compartment of the antacid bottle, he had probable cause to search the vehicle and its contents, including Bradley's cell phone, for further evidence of drug possession or distribution. In *United States v. Murphy*, the Fourth Circuit held that the "'manifest need ... to preserve evidence," required allowing law enforcement officers to retrieve text messages and other information from cell

phones and pagers seized incident to an arrest. 552 F.3d 405, 411 (4th Cir. 2009); *see also United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007) cert. denied 127 S.Ct. 2065 (2007); *United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996). The Fourth Circuit further held that, once a cell phone is held as evidence, other officers and investigators are entitled to conduct a further review of its contents without seeking a warrant. *See Murphy*, 552 F.3d at 412.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The September 14, 2011, warrantless search of the defendants' vehicle was not unreasonable; and

2. The subsequent search and retrieval of information from the cell phone discovered in the vehicle search was not unreasonable.

## RECOMMENDED DISPOSITION

For the reasoning set out above, the undersigned recommends that this court deny the Motions.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed

-8-

Case 2:11-cr-00013-JPJ-PMS   Document 56   Filed 01/18/12   Page 8 of 9   Pageid#: 113

findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations could waive appellate review.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

ENTER: January 18, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE